UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA D.,[1]<br>        Plaintiff<br>v.<br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br>        Defendant. | Case No. 8:20-cv-01917-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.  PROCEDURAL HISTORY

Plaintiff Patricia D. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 21 and 27] and briefs addressing disputed issues in the case [Dkt. 24 ("Pltf.'s Br."), Dkt. 29 ("Def. Br.")], and Dkt. 30 ("Pltf.'s Reply").] The matter is now ready for decision. For the reasons discussed below, the Court finds that this matter should be affirmed.

---

[1]  In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed applications for DIB and SSI alleging disability since April 9, 2012, based on both physical and mental impairments. [Dkt. 23, Administrative Record ("AR") 346-47, 351-356.] Plaintiff alleges disability for back pain, neurogenic bladder, left knee, left ankle, and right hip injury, neuropathy in upper extremities, arthritis, and depression. [AR 674.] On November 18, 2014, after her applications were denied initially and on reconsideration, Plaintiff, represented by counsel, initially appeared at an administrative hearing in Oak Brook, Illinois and testified before Administrative Law Judge ("ALJ") Joel Fina. [AR 17, 1174-1220.] Also appearing and testifying at the hearing were James McKenna, M.D., an impartial medical expert and Amanda Ortman, an impartial vocational expert. [AR 17, 1175.] Because a significant number of records were submitted at the initial hearing on November 18, 2014, and after that hearing, the ALJ held a supplemental hearing on July 14, 2015, with expert testimony. [AR 36, 1219-1220.] Plaintiff again appeared and testified at the supplemental hearing held on July 14, 2015, in Oak Brook, Illinois. [AR 17, 36.]

On December 2, 2015, the ALJ concluded Plaintiff was not disabled and issued an unfavorable decision. [AR 17-26; 1247-1256.] The Appeals Council denied review of the ALJ's decision on December 14, 2016. [AR 1239-1243.] On February 2, 2017, Plaintiff filed a civil action in the Northern District of Illinois. [AR 1226-1235.] On August 18, 2017, the Court issued an Order and Judgment remanding this matter pursuant to a stipulated remand by the parties. [AR 1230-1231.] Shortly thereafter, the Appeals Council issued an order vacating its prior decision and remanded the case back to the ALJ. [AR 1221-1225.]

Following remand, ALJ Fina conducted a third administrative hearing from Oak Brook, Illinois on February 20, 2018. [AR 1119-1173.] Plaintiff, represented by counsel, appeared in Orange, California, and testified along with an impartial medical expert and an impartial vocational expert. [AR 1094.]

On April 25, 2018, ALJ Fina issued a second unfavorable decision. [AR 1094-1108.] The ALJ applied the five-step sequential evaluation process to find Plaintiff not disabled. *See* 20 C.F.R. § 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [AR 1096.] At step two, the ALJ found that Plaintiff suffered from severe impairments including: degenerative disc disease of the lumbar spine, bilateral SI joint pain; degenerative joint disease of the right shoulder status-post repair; carpal tunnel syndrome, status-post bilateral release; diverticulitis; degenerative joint disease of the left shoulder, status-post arthroscopy; and urge and stress incontinence. [AR 1096-1097.] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations, ("the Listings"). [AR 1100]; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with restrictions including:

> The claimant should never climb ladders, ropes, or scaffolds. She can occasionally crawl and climb ramps and stairs. She can frequently balance, stoop, crouch, and kneel. She can never reach overhead. The claimant must avoid concentrated exposure to vibrations and extreme cold.

[AR 1101.] At step four, the ALJ found that Plaintiff was able to perform her past relevant work as a customer service representative, senior service associate, and project manager and that she could perform other work in the national economy. [AR 1107.]

The Appeals Council denied review of the ALJ's decision on July 8, 2020. [AR 1027-1033.] Plaintiff then filed a second civil action in the Northern District of Illinois on July 31, 2020. On September 17, 2020, the Commissioner moved for a change of venue due to the Plaintiff's residency in California. On October 5, 2020,

this appeal was transferred to the United States District Court of the Central District of California. [Dkts. 12, 13.]

Plaintiff raises the following issues challenging the ALJ's findings and determination of non-disability including whether:

1. The ALJ improperly failed to account for all of Plaintiff's severe mental and physical impairments. [Pltf.'s Br. at 6-8.]

2. The ALJ failed to properly determine whether Plaintiff met or equaled a Listing. [Pltf.'s Br. at 8-10.]

3. The ALJ failed his duty to develop the record. [Pltf.'s Br. at 12-14.]

4. The ALJ erred at Step Five by finding that Plaintiff could perform work.

The Commissioner asserts that the ALJ's decision should be affirmed, or in the alternative, remanded for further development of the record if the Court finds the ALJ erred. [Def. Br. at 1-17.]

### III.   GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he

did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV.  DISCUSSION

### A.  The ALJ's Step Two Determination Was Proper

Plaintiff contends that the ALJ erred at step two when he failed to find her depressive disorder and eye condition severe impairments.  [Pltf.'s Br. at 10-11.] The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff did not have a severe mental impairment nor a severe vision limitation. [Def.'s Br. at 2-7.]

The Commissioner defines a severe impairment as "[a]n impairment or combination of impairments . . . [that] significantly limit[s] your physical or mental ability to do basic work activities," including, inter alia: "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1522.  "An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis added) (citations and internal quotation marks omitted).  Step two "is a *de minimis* screening device [used] to dispose of groundless claims, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Id.* (emphasis added) (citations and internal quotation marks omitted).  The claimant

bears the burden of proof at step two. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

### 1. Mental Limitations

In this case, the ALJ made extensive findings to support his determination that Plaintiff's mental impairments were not severe. As the ALJ acknowledged, the opinions of the State agency consultants and the testifying independent medical expert were consistent with the overall record which indicated minimal intermittent mental health treatment and complaints. [AR 1097.] First, the ALJ gave "great weight" to the opinions of impartial medical expert, Michael Cremerius, Ph.D., a medical expert in psychology, who testified at the 2015 administrative hearing and the State Agency medical consultants who reviewed Plaintiff's medical records. [AR 1099.] The ALJ noted that these psychologists examined Plaintiff, noted few abnormal findings, and opined that she had no mental functional limitations. [AR 1097-1098.] In weighing this evidence, the ALJ acknowledged Dr. Cremerius's opinion testimony which concluded that "there really is no severe mental impairment in the record." [AR 1098, 1133.] Specifically, at the hearing, Dr. Cremerius was of the opinion that, based upon his review of the medical evidence, "there would be no restrictions" related to Plaintiff's mental functioning. [AR 1136, 1147.]

Similarly, the ALJ noted that the State agency reviewing psychiatrists, Terry Travis, M.D., and David Gilliland, Psy.D. reviewed Plaintiff's psychiatric records and concurred that Plaintiff had a mild mental impairment that did not result in functional limitation. [AR 162, 188, 1098.] The ALJ found that their assessments were supported by the record and other evidence demonstrating that Plaintiff's mental impairments caused no more than a mild limitation. [AR 1099.] This was an appropriate determination. The opinions of non-examining physicians, like the testifying independent medical expert and the State agency medical consultants, may serve as substantial evidence when their opinions "are consistent with

independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *cf. Neugebauer v. Barnhart*, 154 Fed.App'x 649, 650 (9th Cir. 2005) ("the ALJ was free to rely on non-treating agency physician reports that contained specific clinical support").

Second, the ALJ was free to reject the contradicted one-time evaluation performed by Dr. Burlingame on February 23, 2013. [AR 685-691, 1097.] The ALJ noted that Plaintiff flew to Washington state to see Dr. Burlingame for a one-time examination for her worker's compensation claim. [AR 109.] Following that visit, Dr. Burlingame issued a report stating that Plaintiff was severely disabled, severely mentally ill, and "severely, acutely disturbed." [AR 692.] Moreover, that Plaintiff suffered from bipolar affective disorder with psychotic features—a diagnosis not found anywhere else in the record. [AR 689, 691.] Dr. Burlingame stated that Plaintiff would be unable "to sustain any work" and "her mental status would not ever get along with instructions, other personnel, or the public." [AR 691.] According to Dr. Burlingame, Plaintiff was incapable of performing any significant, meaningful job or occupation. [AR 691.] He assessed a GAF score of 35 and he opined that Plaintiff "is ill enough currently to justify in-hospital treatment…for a total duration of six months." [AR 689-691.]

The ALJ noted that Dr. Burlingame's opinion was heavily contradicted by the opinions of Dr. Cremerius and the state agency examiners and otherwise not supported by the medical record as a whole. [AR 1099.] In rejecting Dr. Burlingame's opinion, the ALJ relied on Dr. Cremerius's explicit testimony stating that there was "virtually no support anywhere else in the record" for Dr. Burlingame's opinion. [AR 1098, 1138.] Specifically, Dr. Cremerius testified in detail regarding the reasons he believed that Dr. Burlingame's opinion was unreliable. [AR 1135, 1138.] Dr. Cremerius stated that "there was no support for the severity of the psychiatric issues identified [in Dr. Burlingame's assessment] that somebody would have. With that kind of mental health issues, they would show up

somewhere else other than this one-time evaluation." [AR 1135.] Dr. Cremeius went on to state: "I would also say her own activities of daily living (ADLs) don't support it. The review by Dr. Gil doesn't support it, and neither do the treating source records from Partnership with Families offer any kind of support for that reviewer." [AR 1135.]

The reliance on Dr. Cremerius's opinion and other evidence in the record to reject Dr. Burlingame's outlier opinion was specific and legitimate as an ALJ may permissibly reject a medical opinion of a non-treating examining physician that is unsupported by the record as a whole. *See* 20 C.F.R. § 416.927(c)(4) ("[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) ("The ALJ permissibly rejected a medical opinion of a non-treating examining physician that was unsupported by the record as a whole.").

Plaintiff does not provide any reason or argument for why the ALJ should reject the findings of Dr. Cremerius in favor of the unsupported findings by Dr. Burlingame and the Court can find none either. It is the ALJ's duty to resolve conflicts in the evidence, including conflicting medical evidence from examining and treating physicians. *See Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (noting that ALJ may reject the opinion of a treating physician in favor of the conflicting opinions of an examining physician). The Court must affirm the ALJ's decision even where the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). Based on the above, the Court finds that the ALJ did not err in his evaluation of Plaintiff's mental impairment.

///

### 2. Vision Impairment

Next, Plaintiff argues that the ALJ erred at step two by failing to find her eye condition a severe impairment. According to Plaintiff while she wears glasses, she has "moderate cataract formation," and she suffers from a "temporal pinguecula" in both eyes, the ALJ ignored evidence of her severe vision impairment. (Pltf.'s Br. at 7; Reply at 2.)

Plaintiff is correct that the ALJ did not expressly discuss her vision problems at step two. However, while the ALJ did not discuss all of the symptoms accompanying Plaintiff's eye condition within the step two analysis section of the decision, the ALJ clearly did not ignore these symptoms. Later in the decision, the ALJ explicitly noted that, due to her cataracts, Plaintiff "cannot see at night and that she is planning to get eye surgery in a year." [AR 1102.] Despite this express acknowledgment, the ALJ simply concluded that this eye condition and its symptoms "ha[d] no more than a minimal effect on [plaintiff's] ability to work." *Webb*, 433 F.3d at 686. Substantial evidence supports this conclusion.

Plaintiff has not demonstrated that evidence of her vision impairment did in fact affect her ability to work, even minimally. Plaintiff did not identify any vision problems as a basis for her disability claim, and she has not alleged any specific limitations supposedly resulting from these conditions. "The mere existence of an impairment is insufficient proof of a disability. . . . A claimant bears the burden of proving that an impairment is disabling." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citations omitted).

Moreover, the record firmly establishes that Plaintiff's vision impairment was minimal in nature. At the 2014 hearing, James McKenna, M.D., a medical expert, provided testimony regarding Plaintiff's vision complaints. Dr. McKenna stated that Plaintiff's cataracts are "not functionally significant." [AR 139.] Dr. McKenna's review was based in part on Plaintiff's visit to an ophthalmological specialist in June 2013 with Richard Bensinger, M.D. [AR 640-45.] Upon

examination, Dr. Bensinger recorded that Plaintiff's "vision in each eye corrects to 20/20." [AR 643.] He further stated, "[t]he diagnostic impression is that the claimant has normal and healthy eyes." [AR 643.] Next, Plaintiff attended a separate independent medical examination in September 2013 with Leonard Alenick, M.D. [AR 646-51.] Dr. Alenick noted "great discrepancies" between what Plaintiff reported at his exam, and what she reported to other physicians. [AR 649.] He stated that "my suspicion is that there is no disability from this injury… I would say we have somebody that is engaging in symptom magnification of a great degree." [AR 650.] Dr. Alenick concluded, "as far as the poor visual performance in my office, I believe she is symptom magnifying." [AR 651.] He further found that Plaintiff's vision problems were "typical at her age." [AR 650.] These medical opinions, which the ALJ found persuasive, furnish substantial evidence supporting the ALJ's decision that Plaintiff's vision impairment is nonsevere.

But even assuming some error, the Court sees no prejudice to Plaintiff given that the ALJ decided step two in Plaintiff's favor and went on to consider Plaintiff's vision difficulties when formulating the RFC. [AR 1102]; *see Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (failure to identify impairment as severe at step two is harmless where the ALJ considers any limitations posed by the impairment at step four). That the RFC the ALJ ultimately assigned did not include accommodations or exceptions related to Plaintiff's eye condition does not mean—as Plaintiff suggests—that there was harmful error. It simply reflects the ALJ's reasonable view that the record evidence did not establish any work-related limitations arising from Plaintiff's present condition. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (because the ALJ considers all impairments both severe and nonsevere in determining a claimant's residual functional capacity, "the [residual functional capacity] therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not"). The Court finds no reversible error in the ALJ's step two findings.

**B. The ALJ Did Not Err at Step Three**

Plaintiff asserts that the ALJ erred at step three of the sequential evaluation process by failing to find her impairments equaled eleven different Listings including 1.02A, 1.02B (joint dysfunction); 1.00B2b, 1.00B2c (musculoskeletal disorders); 1.04A, 1.04B, 1.04C (disorders of the spine); 12.03, 12.04, 12.06 (mental disorders); and 2.00 (visual listings).[2] (Pltf.'s Br. at 8-9.)

The Listing of Impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 416.925. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (*citing Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990)). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Kennedy*, 738 F.3d at 1176. If a claimant meets the listed criteria for disability, she will be found to be disabled. 20 C.F.R. § 416.920(a)(4)(iii).

"To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 416.925(d). "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory

---

[2] Plaintiff makes a related argument that the ALJ failed to apply Grids 201.10, 201.12, and 201.14 at step three. However, Plaintiff misunderstands the sequential evaluation. The Grids are tables that present various combinations of factors the ALJ must consider in determining whether other work is available. *See generally Desrosiers v. Sec'y of Health and Human Services*, 846 F.2d 573, 577-78 (9th Cir. 1988). As such, the Grids are not applied until step five of the sequential evaluation. Because the Grids are inapplicable at step three, the Court disregards that portion of Plaintiff's argument.

11

findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)). "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Id*. However, "[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Id.* at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

The claimant bears the burden of establishing her impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." SSR 17-2P, 2017 SSR LEXIS 2, 2017 WL 3928306, at *4 (effective March 27, 2017).

Plaintiff contends the ALJ failed to "go through the elements of each Listing" she set forth at step three. (Pltf.'s Br. at 9-10.) However, the Court notes two errors in Plaintiff's argument.

First, "[i]t is unnecessary to require the [ALJ], as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). The regulations do not require the ALJ to list out and analyze every subsection of a given listing. Rather, the regulations merely require the ALJ to undergo a careful review of the claimant's symptoms on the record. Further, there is no requirement that the ALJ's discussion of the evidence must occur at the step three determination. *Lewis v. Apfel*, 236 F.3d

503, 513-14 (9th Cir. 2001) (ALJ must discuss and evaluate evidence that supports step-three conclusion but need not do so under a specific heading). The ALJ does not err by discussing the evidence supporting his conclusion in other sections of his decision as the ALJ did here. *See Gonzalez*, 914 F.2d at 1200-01 (finding no error when ALJ failed to state or discuss evidence supporting conclusion that claimant's impairments did not satisfy Listing but "made a five page, single-spaced summary of the record").

Here, in finding that Plaintiff's impairments and combinations of impairments did not meet or equal any listings, the ALJ generally considered musculoskeletal impairments under Listing 1.00 and paid specific attention to sections 1.02 (major dysfunction of joint), 1.04 (disorders of the spine), 5.00 (digestive disorders) and 11.14 (peripheral neuropathy) of the listing of impairments. [AR 1100-1101.] Then, at step four, the ALJ dedicated several single-spaced pages to summarizing and analyzing the medical evidence and Plaintiff's testimony [AR 1101-1106.] Because those findings were sufficient to support the ALJ's step-three conclusion that Plaintiff's impairments did not meet or equal a Listing, he did not err.

Second, the ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *See Burch*, 400 F.3d at 683 (affirming the district court's finding that the claimant "bears the burden of proving that ... she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations").

Here, Plaintiff has failed to point to any credited evidence of functional limitations, with record citations, explaining how she meets the numerous Listings referenced. Nor has she offered any plausible theory of how the combination of her impairments equaled a Listing. Thus, Plaintiff has failed to demonstrate the ALJ erred, "as a matter of law," simply because he did not specifically identify Listings

1.00B2b (inability to ambulate effectively), 1.00B2c (inability to perform fine and gross movements effectively), 12.03 (schizophrenic, paranoid, and other psychotic disorders), 12.04 (depressive and bipolar related disorders), 12.06 (anxiety and obsessive-compulsive disorders), or 2.00 (visual listings) when determining Plaintiff did not meet a listed impairment at step three.[3]  *Lewis*, 236 F.3d at 514 (finding the ALJ did not err at step three when the plaintiff offered no theory, plausible or otherwise, as to how his impairments combined to equal a listed impairment or pointed to evidence showing his combined impairments equal a listed impairment).  Therefore, the Court concludes Plaintiff has failed to show the ALJ erred at step three of the sequential evaluation process.

### C. The ALJ's Duty to Develop the Record

Plaintiff contends the ALJ was required to develop the record further with an "examination or evaluation by a consultative neurologist, orthopedist or other relevant specialist" to determine the extent of her limitations.  (Pltf.'s Br. at 12-13.)  According to Plaintiff, the ALJ should have retained the services of additional medical experts instead of relying on "his own lay assessment" of her subjective symptom testimony.  (Pltf.'s Br. at 12-13.)  While not entirely clear, it appears that Plaintiff is arguing that the ALJ's interpretation of her subjective symptom testimony should have been performed by a medical expert and not the ALJ.  This argument is unavailing.

It is unquestionable that the record in this case has been fully developed.  The

---

[3]  Furthermore, while Plaintiff's identifies Listings for visual impairments (2.00) and mental impairments (12.04 and 12.06), as discussed above, the ALJ declined to find those impairments severe.  Only if an impairment is "severe," is the Commissioner required to move to the next step of his analysis and determine whether the severe impairment(s) meet or medically equal a Listed impairment. *See, e.g., Washington v. Astrue*, 698 F. Supp. 2d 562, 581 (D.S.C. Mar. 17, 2010) (finding ALJ need not evaluate whether an impairment found to be nonsevere satisfies a particular listing).  Because the ALJ did not find Plaintiff's mental and visual impairments to be "severe," there was no reason for him to assess whether those impairments met or equaled a Listing.

14

ALJ called independent medical experts to testify at three separate administrative hearings in 2014, 2015, and 2020. [AR 37, 1037, 1177.] Beyond that, Plaintiff was referred to at least two different consultative examinations in 2014. [AR 667, 674, 679.] Moreover, Plaintiff was represented by an attorney at the administrative level and had an opportunity to provide any evidence she believed would support her claim. [AR 38.] By arguing that the ALJ should have elicited even more expert testimony under these circumstances, Plaintiff is attempting to shift the burden to prove disability, however it is her duty to prove that she disabled. 20 C.F.R. § 404.1512(a)(1) ("In general, you have to prove to us that you are . . . disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled (see § 404.1513). This duty is ongoing and requires you to disclose any additional related evidence about which you become aware."). The ALJ is not a roving investigator; his duty "to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *see Webb*, 433 F.3d at 683 (explaining that the duty to enlarge the record only arises if the evidence is ambiguous, the ALJ finds that the record is inadequate, or the ALJ relies on an expert's conclusion that the evidence is ambiguous).

      Here, the record contained ample evidence concerning Plaintiff's limitations to allow the ALJ to determine if Plaintiff suffered from a disabling condition; and that evidence was appropriately evaluated by the ALJ. There was no requirement in these circumstances that the ALJ seek out additional records not presented by Plaintiff, as the record was neither ambiguous nor inadequate to permit a full and proper evaluation of Plaintiff's impairments. Moreover, although Plaintiff argues that the ALJ committed error when he relied on his own "lay assessment" to interpret her symptom testimony, this case is far afield from the typical cases addressing an ALJ's lay medical interpretation which often speak of an ALJ

15

impermissibly interpreting "raw medical data" such as complex imaging and laboratory testing results. *See, e.g., Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ formulated claimant's residual functional capacity based on magnetic resonance images without the benefit of any medical opinion about the functional limitations attributable to the impairments depicted in the images); *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019 U.S. Dist. LEXIS 564, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (finding that the ALJ erred in adopting state agency consultants' opinions which were rendered before "plaintiff sustained a fall in November 2014" and before "an April 2015 MRI of the lumbar spine [which] showed L1 compression deformity with worsened kyphosis . . ."). Such is not the case here.

Plaintiff does not identify what evidence she contends is unsusceptible to a lay understanding or why. Rather, Plaintiff's argument is predicated on the incorrect assumption that, as a matter of law, an ALJ is unqualified to independently interpret her subjective symptom testimony. Practically speaking, the ALJ's primary role is to evaluate and synthesize all the medical and non-medical evidence in the record to arrive at the RFC findings. 20 C.F.R. 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."). Accepting Plaintiff's argument would mean that the ALJ is always precluded from reviewing such testimony and must obtain a consultative examination in essentially every case. As explained above, there is no such legal requirement absent evidentiary ambiguity or the presence of pertinent medical records unsusceptible to lay understanding. Because Plaintiff does not establish that these criteria were met here, there is no basis to find that the ALJ erred in failing to further develop the record with an additional examining or reviewing opinion.

**D. Substantial Evidence Supports the ALJ's Step Five Finding**

As a final matter, Plaintiff argues that the ALJ's finding that she could perform her past relevant work or other sedentary work as it exists in the national

economy is not supported by substantial evidence. (Pltf.'s Br. at 14-15.) Specifically, Plaintiff argues that (1) she must nap for an hour during the day; and (2) Dr. Thomas Gritzka, a workers' compensation evaluator, determined that "because of her right buttock pain…without treatment, in combination with psychological factors affecting physical condition, [Plaintiff] would probably miss work 3 or more times per month." [AR 615; Pltf.'s Br. at 14.] Because the ALJ erroneously failed to incorporate these limitations into her RFC, Plaintiff argues, the ALJ's ultimate finding that she could perform her past relevant work or other sedentary work with restrictions is flawed. [AR 615.] The Court again disagrees with Plaintiff's position.

At step four of the disability determination, it is the claimant's burden to demonstrate she cannot perform her past relevant work. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008) (citations omitted); *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). If a claimant can perform her past relevant work, then she is not disabled. 20 C.F.R. § 404.1520(e); *Lewis*, 236 F.3d at 515. At step five of the sequential analysis, the RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or equivalent work schedule. SSR 96-8p, 1996 SSR LEXIS 5. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p, 1996 SSR LEXIS 5. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Plaintiff's argument regarding the ALJ's findings at step four and step five is not well taken. That Plaintiff takes issue with the fact the ALJ did not incorporate

every limitation Plaintiff desires does not amount to error. In this matter, the ALJ found that Plaintiff had the RFC to perform sedentary work with additional limitations, and the VE testified that a hypothetical individual with such an RFC could perform Plaintiff's past relevant work as well as several other jobs. In doing so, the ALJ gave "significant weight" to Dr. Gritzka's 2013 report as follows:

> In a report dated January 29, 2013, Thomas L. Gritzka, M.D. opined the claimant could perform sedentary to sedentary light jobs which allowed her to work at her own pace, to sit and stand as needed and do no lifting over 15 pounds on an occasional basis.

[AR 1104]. Thus, like Dr. Gritzka, the ALJ found that Plaintiff could perform sedentary work and the hypothetical the ALJ gave to the VE closely corresponds with the RFC he ultimately assigned to Plaintiff.

Plaintiff does not argue that the hypothetical posed to the VE failed to include all the limitations found in her RFC. Instead, Plaintiff contends that her daily naps and the likelihood she would miss work three days a month precludes her from completing "employment of any kind" as the various vocational experts testified that an individual who would miss more than one day a month would be precluded from employment. (Pltf.'s Br. at 14.) However, an ALJ is not obliged to accept as true all limitations alleged by Plaintiff and may decline to include such limitations in the vocational expert's hypothetical if they are not supported by sufficient evidence. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (rejecting claimant's contention that ALJ erred at step five by failing to account for her limitations in the ALJ's hypothetical where claimant "simply restates" a prior RFC argument); *Contreras v. Berryhill,* No. 1:15-cv-01483-BAM, 2017 U.S. Dist. LEXIS 38174, at *30 (E.D. Cal. Mar. 15, 2017) (A claimant fails to establish that a step 5 determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was

18

properly rejected.).

"Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . .." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422. Nevertheless, an ALJ is only required to present the VE with those limitations he finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001). Here, the ALJ posed a number of hypothetical questions to the VE setting out the various limitations and restrictions. Plainly, the ALJ's RFC is based upon those limitations he found to be credible and supported by the evidence.

In conclusion, the ALJ did not err at step four or step five regarding either the RFC or hypothetical questions posed, and his findings are supported by substantial evidence. Accordingly, remand is not warranted on this basis.

## V.  CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: February 23, 2022

GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE